ENGEL, Appellant, vs. T. L. SMITH COMPANY, Respondent.

*October 6, 1916—January 16, 1917.*

*Master and servant: Injury to employee of subcontractor: Safety of working place: Possession and responsibility of principal contractor: Operations rendering place unsafe: Proximate cause:   · Changing findings of jury: Excessive damages for death.*

1. In an action to recover for the death of an employee due to the fact that his working place was unsafe, if the defendant was in possession of and furnished the working place and it was unsafe at the start or was rendered so by defendant's operations while the work of the employee was in progress, the defendant cannot escape liability on the ground that the immediate employer of the decedent was an independent contractor.

2. Defendant contracted to furnish the material and machinery and construct a rock-crushing plant for a county, and to give the county ten days after its completion to try it and determine whether it satisfied the agreement. Afterwards defendant sublet to one R. the furnishing of certain material and the erection of the plant ready for use, defendant to have ten days after such erection to determine whether the subcontract had been satisfactorily performed. When R.'s contract was substantially completed, defendant's agent, with a committee of the county board and certain county employees, visited the plant to see whether it was ready for use, and if so to take charge of it. Upon starting certain machinery it was found that the hopper over the crusher was too low, and defendant's agent engaged R. to make the necessary changes therein as extra work. Two days later the county employees who were present at the first test, and who had received certain instructions from defendant's agent, visited the plant again and started the machinery, whereupon a guy cable slipped out of its clip, causing a mast to fall and fatally injure an employee of R. who was engaged in making the changes in the hopper. In an action for the death of such employee it is *held*, upon the evidence, that defendant took possession of the plant on the day the arrangement was made for the extra work; and it was therefore responsible for the safety of the working place of the deceased if, at the time of the accident, the machinery was being operated by its authority.

3. There being ample evidence to sustain findings by the jury that the working place of the deceased was not as safe as the nature of the employment would reasonably permit, that the machinery was started, at the time of the accident, by a county employee

by direction of defendant's agent, and that the agent had au-
thority to give such direction, the trial court erred in changing
the finding that the agent gave such direction and also in chang-
ing a finding that defendant's failure to furnish a safe working
place was the proximate cause of the accident.

4. Damages for the death of a person should be limited to the meas-
ure of pecuniary benefits which the surviving relative could rea-
sonably have expected to realize from a continuation of the life
of the deceased.

5. For the death of an unmarried son, thirty years old, who earned
$1.50 per day and gave all but enough to cover his reasonable
necessities to support the family, an award of $4,800 to his wid-
owed mother, aged fifty-three, who was in good health and earn-
ing money and who had four other sons, ranging in age from
five to eighteen, contributing to the family support, is *held* ex-
cessive, and plaintiff is given an option to take judgment for
$3,500 or submit to a new trial.

APPEAL from a judgment of the circuit court for Milwau-
kee county: W. B. QUINLAN, Judge. *Reversed.*

Action to recover for the death of plaintiff's son, claimed to
have been caused by negligence of defendant.

Defendant, March 15, 1913, contracted, in writing, to con-
struct for and deliver to Racine county, Wisconsin, at its
gravel pit, a complete rock-crushing plant, furnishing all ma-
terial and machinery therefor, and to afford ten days' time
after the completion thereof to try the apparatus and deter-
mine whether it satisfied the agreement; and to instruct the
county's engineer how to operate the same.

Defendant contracted with one, Rewald, to unload the ma-
chinery and material from cars, provided by the former in
performing its agreement with the county, to furnish certain
other material for use in constructing a bin, hopper tower,
hopper, mast, and the necessary buildings for, and to erect
the plant, ready for use, in all respects according to such
agreement, and to afford defendant ten days' time after such
erection, to test the plant for the purpose of determining
whether the subcontract had been satisfactorily performed.

In all transactions aforesaid, and in respect to performance
of the contracts, defendant was represented by one, Marker,

who prepared the plans and specifications for the work. When Rewald had executed his contract, except as to some small matters, Marker, with a committee of the county board, and three employees of the county, Heidermann, Winsall, and Bettzig, visited the plant for the purpose of seeing whether it was ready for use, and, if so, taking charge of it. The county board was anxious to put the plant to use as soon as practicable, and so, by its representatives, acted with defendant, represented by Marker, in starting that part of the machinery, designed to convey gravel from the gravel pit to the hopper over the crusher. There was a seventy-foot mast fastened in place by guy cables, anchored in the ground at the lower ends and fastened to the top of the mast at the upper ends by such ends being passed around a cap or through eyes and doubled back and embraced by clips. One guy was opposite a track cable, extending from the top of the mast over, and some distance above, the hopper, to the gravel pit and there anchored. The particular guy was designed to bear the strain caused by moving the bucket loaded with gravel on the track cable from the pit to a dumping point over the hopper. The hopper was located within reach of the mast in case of its falling that way. The bucket was suspended from a carriage which traveled on the track cable. The carriage, with the bucket, mentioned in the verdict as an "excavator," attached thereto, was designed to be moved from the gravel pit to the dumping point over the hopper on a track cable, by means of an operating cable, called in the verdict a "drag line," attached to the bucket and extending to and over a pulley near the top of the mast, then down to and connected with a drum, located near the foot of the mast. The drum, by appropriate connections with motive power, was designed to be operated by an attendant, as desired, by manipulation of connecting levers. It was necessary to have what was called a trip button attached to the track cable at the proper point to cause the bucket to empty its load into the hopper upon reaching such point. The visit to the plant above mentioned was two days

before the accident. Some finishing work was then being done by Rewald, but his contract was substantially completed. He had not formally turned the plant over to be tested. It was necessary to complete the job for operation to properly place the trip button. Whether it was placed at all at this time was disputed on the trial. If then attached, it was some distance from the hopper location and near the gravel pit. The machinery was started to see how the bucket would perform from the gravel pit to the proper dumping point. At the first movement it was discovered that the hopper was too low. No attempt was made to run the bucket to the dumping point. Upon making such discovery, operations were stopped. Marker then engaged Rewald to make the necessary changes in the hopper, as extra work. That consisted of changing its location, somewhat, and building it much higher. Two days thereafter, a second visit was made to the plant by Heidermann, Winsall, and Bettzig, representing the county. Heidermann claimed that on the previous occasion, Marker directed him to place the button and see that everything was ready for a test. Henry Engel, at the time of the second visit, as an employee of Rewald and by his direction, was working on top of the hopper, engaged in doing the work ordered, two days before. In the afternoon, Heidermann caused the button to be placed, and the machinery to be started up. The bucket had been moved on the track cable, empty, in the morning. On the particular occasion it was loaded. The button was placed by Bettzig and another, by Heidermann's direction. The latter directed all operations. Bettzig was placed so as to give appropriate signals to Winsall, who was directed to operate the hoisting device. During the first movement of the bucket, the guy opposite the track cable slipped out of its clips, causing the mast to fall toward Engel's working place and to strike and fatally injure him.

There was evidence establishing, or tending to establish, the matters mentioned; also that the guy cable was negligently secured, in that it was fastened by two clips while the specifications called for four, and more than two were required, and that the machinery was not properly operated.

The case was submitted to the jury for a special verdict which covered the issues made by the pleadings, so far as requested by the parties. Such other issues as there were, the trial court determined.

The jury found:

1. Defendant did not furnish deceased a place of employment as safe as the nature of the employment would reasonably permit.

2. Such failure was a proximate cause of the accident.

3. Marker directed Heidermann to run the drag-line excavator on the day of the accident.

4. Marker had authority to give such directions.

5. Defendant was guilty of negligence in constructing the plant.

6. Such negligence was a proximate cause of Engel's death.

7. Winsall was not guilty of any negligence in operating the hoisting apparatus.

8. It will require $4,800 to compensate plaintiff for her loss, occasioned by Engel's death.

Plaintiff's counsel moved for judgment on the verdict, which was denied. On motion of counsel for defendant, findings 2, 3, 5, 6, and 7 were reversed, leaving the verdict to stand, aside from the matter of damages, as follows: (1) Defendant did not furnish deceased a place of employment as safe as the nature of the employment would reasonably permit. (2) Such failure was not a proximate cause of the accident. (3) Marker did not direct Heidermann to run the drag-line excavator on the day of the accident.

(4) Marker had authority to give such direction. (5) Defendant was not guilty of negligence in constructing the plant. (6) Negligence on the part of defendant in constructing the plant was not the proximate cause of Engel's death. (7) Winsall was guilty of negligence in operating the hoisting apparatus.

On the verdict as so changed, judgment was rendered in favor of the defendant, the court deciding, in an opinion filed as a basis for the order changing the verdict, that Rewald was an independent contractor; that at the time of the accident the plant had not been turned over by Rewald; that the instructions given by Marker to Heidermann did not authorize him to start the engine or run the plant; that he only told him to fix the button and have everything in readiness; that Bettzig and Winsall were not employees of defendant; that what Marker meant, in his talk with Heidermann, was that when the button was fixed and hopper completed, the defendant would test the plant and, if found satisfactory, accept it of Rewald; that the contract with Rewald relieved defendant from all interference until it accepted the plant from him.

For the appellant there were briefs by *Tibbs, Foster & Schroeder,* attorneys, and *Daniel W. Sullivan,* of counsel, and oral argument by *Mr. William L. Tibbs* and *Mr. Sullivan.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Arthur W. Fairchild.*

The following opinion was filed October 24, 1916:

MARSHALL, J.    Errors are assigned on behalf of appellant because the court decided that the rock-crushing plant was in possession of Rewald at the time Engel was furnished his working place and at the time of the accident, and because answers given the jury were changed from being in favor of appellant so as to favor respondent.

The first four findings as made by the jury entitled appellant to recover. In submitting the question as to whether respondent furnished Engel a place of employment as safe as the nature of the employment would reasonably permit, and instructing in respect thereto, as was done, that if the guy cable was negligently fastened to the mast, such question should be answered in the negative, and not submitting any question on the precise point of whether respondent was in possession of the plant when the working place was furnished, obviously, it was held that there was no question, on the evidence, but that such possession existed and respondent was responsible for the safety of such working place. It is significant that the answer to the first question was not changed. So the verdict as corrected to harmonize with the views of the court, on its face, is to the effect that respondent did not perform its duty of furnishing Engel a suitable working place. So the court must have held, in the end, that the question was immaterial because the plant was not in possession of respondent when the working place was furnished or when the accident occurred. If it were in such possession, and furnished such place, and the place was not safe, within the rule of the statute, at the start, or was rendered so by its operations, while the work was in progress, it cannot escape liability upon the ground that the immediate employer of Engel was an independent contractor. *Jacobs v. Hershey L. Co.* 124 Wis. 54, 102 N. W. 319, and similar cases relied upon by counsel for respondent, do not apply to such a situation, as they clearly show.

Whether an immediate employer is a mere agent or an independent contractor, under the rule in question, is not always free from difficulty. The question is one of law where the facts are clear. It is unnecessary to point out here, if that could safely be done, the precise scope of the rule. It is sufficient to say that it does not include a situation such as

existed in this case, if respondent was in possession of the working place when it was furnished, and it was then unsafe, or was subsequently rendered so by respondent's operations.

The final decision, as to possession of the plant, as counsel for respondent contends, must, under the statute, have all the force of a jury finding, since it is a matter which was not submitted to the jury, and there was no request in that regard. However, its dignity is somewhat lessened from that which it would otherwise possess because of the fact that, when the case was submitted, the evidence was fresh in mind, and the court's attention was specially directed to the matter by an objection on behalf of respondent to submission of the first question, the conclusion was reached that the evidence so clearly showed possession of the plant in respondent as not to leave any issue in respect thereto for the jury.

In our judgment, from the record, the trial court was clearly right at first and clearly wrong in the end.    It seems that the judge must have overlooked the fact that Marker, who represented respondent, at no time testified that the latter did not take possession of the plant on the day he visited it and discovered that a change in the hopper was necessary; and confused the matter of possession by respondent with that of possession by Racine county.    Marker testified, positively, that the plant had not been turned over to the county at the time of the accident but not that it had not been turned over to respondent.

Much is made on behalf of respondent of the fact that there were some trifling details of Rewald's contract which were not completed at the time in question, and that the trip button was not in place until that was done by Heidermann, on the day of the accident.    Who was to locate the trip button was dealt with on the argument as if that was a vital matter, but it seems otherwise.    It was the merest kind of a detail which any one could attend to in a few moments, and Marker testified that "To place this button in position would be our

duty, of course, to get the plant in complete operation, and not the duty of Rewald." The evidence is very definite to the effect that there was nothing of consequence for Rewald to do when Marker, with a committee of the county board, and the employees of the county, visited the plant two days before the accident. Marker testified that everything but changing the hopper had been done. That is, that the contract made with Rewald to construct the plant was substantially completed when he was engaged to do the extra work of changing the hopper.

We will not spend time to discuss the evidence at length. It satisfies us that respondent, by its agent, Marker, took possession of the plant on the day the arrangement was made for the extra work and would then have turned the property over to the county had it not developed that the plan for the hopper was defective. Therefore, in employing Rewald to change the hopper, and while that was being done, operating the drag-line excavator, respondent was responsible for safety of the working place in question. That it was not as safe as the nature of the employment would reasonably permit, there was ample evidence. That being the case, the court clearly erred in changing the answer to the question as to whether the failure to furnish a suitable working place was a proximate cause of the deceased's injury and death, unless Heidermann was a mere interloper, instead of an agent of respondent by authority of Marker, in operating the drag-line excavator. That such authority existed was found by the jury, upon ample evidence, and the answer was not disturbed.

So the case really comes down to whether the court was clearly wrong in holding that there was no evidence tending to prove that Marker directed Heidermann to run the dragline elevator. In our judgment that must be answered in favor of appellant. As we have said, Marker testified that it was respondent's business to place the button in proper position on the track cable. Heidermann testified that Marker

instructed him to do it and see that everything was ready for a final test. That was corroborated by Bettzig and was not really denied by Marker. The evidence, as a whole, convinces us that there was ample tending to show that, after Marker set Rewald and his employees to work to change the hopper, he left the plant in charge of Heidermann to look after it and do, or have done, whatever was necessary to get everything in shape for a final test and delivery of possession to the county, and, therefore, the finding of the jury on that subject should not have been changed.

It follows that appellant was entitled to recover on the verdict as rendered, but we are of the opinion that the damages assessed are far too large. That matter was not passed upon by the trial court. It was not necessary to do so; but, in sending the case back for further proceedings, it is considered that such matter should be dealt with.

The damages in such a case as this should be limited to the measure of pecuniary benefits which the surviving relative could reasonably have expected to realize from a continuation of the life of the deceased. That rule is too well understood to require citation of authority in respect to it, though it is not always kept in mind and the jury carefully instructed in regard thereto. The jury were quite fully instructed in this case, but do not seem to have comprehended that plaintiff's recovery should be limited as indicated, and the finding be based on evidence sustaining it to a reasonable certainty.

The deceased was thirty years old when killed. Plaintiff's husband survived him one year. Deceased was unmarried. Plaintiff was about fifty-three at the time of the accident. She is in good health and capable of, and does, earn money to, in part, support herself and family. She has four children, all sons, ranging from five to eighteen years of age. So far as their ages will permit, they show good disposition and capacity to aid her. The deceased earned $1.50 per day and all, except sufficient to cover his reasonable necessities, cus-

tomarily went for support of the family. The amount found by the jury would be equivalent to an annuity of about $225 per year during appellant's expectancy of life. That she could not reasonably have expected that measure of support from her son, seems very clear.

In the judgment of the court, the recovery should be reduced to $3,500 and that such sum will satisfy the rule that, in disturbing a verdict upon the ground of its being excessive, by requiring the plaintiff to take a less sum, or submit to a new trial, the amount named should be as small as an unprejudiced jury on the evidence, when properly instructed, would probably find. For myself, I am permitted to say, in this opinion, that such rule, in my judgment, requires the sum named here to be considerably lower than $3,500, but it is a matter in respect to which there may, easily, be differences of opinion.

*By the Court.*—The judgment is reversed, and the cause remanded with instructions to restore the answers made by the jury to the second, and third, questions, and to render judgment in favor of plaintiff for $3,500, and costs, if she elects to accept such recovery within thirty days after a return of the record to the court below, otherwise that there be a new trial.

A motion for a rehearing was denied, with $25 costs, on January 16, 1917.