LA COCO, Appellant, vs. MASSEY STEAMSHIP COMPANY,
Respondent.

*May 31—July 13, 1921.*

*Admiralty: Injury to stevedore: Concurrent jurisdiction of state
and admiralty courts: Negligence in unloading vessel: An-
ticipation of injury.*

1. Though a suit against the owner of a vessel for injuries sus-
   tained by a workman while assisting in unloading it for the
   consignee might have been brought in the admiralty court,
   a state court, administering common-law remedies, had con-
   current jurisdiction where no remedy against the vessel was
   claimed.

2. Where there was no structural defect in the vessel when turned
   over to the consignee of the cargo for unloading, the owner
   was not bound to anticipate that the unloading would be
   carried on by the consignee or the stevedores employed by it
   in so unusual a manner as to cause injury to its employees.

APPEAL from a judgment of the circuit court for Mil-
waukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

Action for damages for personal injuries. Trial in the
civil court of Milwaukee county resulted in judgment for
plaintiff upon a special verdict. Upon appeal to the circuit
court judgment was reversed and the complaint was ordered
dismissed. Plaintiff appeals.

Appellant was a laborer who had for many years worked
in and about ships and docks. Respondent was the owner
of the ship "Tioga," upon which the injury occurred.

The "Tioga" was a steel or iron ship, formerly a package
freighter, but recently converted into a gross freighter for
the carrying of such commodities as coal. She had been a
two-decked vessel, the lower deck separating an upper from
a lower hold. There were large hatchways in the upper
deck for the purpose of admitting the clam-shell scoops
used for unloading. Those parts of the lower deck which
came under these hatchways had been removed so that the
clam-shells could be lowered to the bottom of the hold. The

lower deck was made of metal plates resting upon a metal framework, and when the opening was made under the hatchway in question a part of the deck was left projecting like a shelf inward from the wall of the vessel to a point under the edge of the hatchway. Along the edge of the projecting plate beneath this hatchway a piece of partly rounded metal had been fastened and formed what was described as a coaming. It was riveted to the under side of the plate and flush with its edge. Respondent intended to remove the lower deck the coming winter and reconstruct it.

On June 20th the boat was inspected at Buffalo by the government inspectors and passed as in full compliance with the laws and regulations of the inspection service. The coal company which conducted the unloading operations did so at a dock which had not been used for two years, there was some trouble with the unloading machinery, and the operating personnel was assembled hurriedly, three of the four operators of the hoisting clams being inexperienced. There was testimony that in unloading coal ships the clams, which in this case weighed three tons, occasionally struck the sides of the hatchways and would then rebound and strike the opposite sides. With this particular unloading there was an unusual amount of this striking, and the foreman had warned men in the hold to be careful as there were inexperienced hoisters on the job. Appellant denied having heard the warning.

Appellant was working upon the unloading operations in the hold underneath the lower deck and near the hatchway which has been described. About ten or fifteen minutes before the accident a fellow workman had noticed that the iron coaming which caused the injury was loose at one end, and he changed his place of work to avoid danger from it. Appellant was assisting the lowering of the clam, and when it struck the bottom of the hold the iron coaming fell upon him causing injuries.

It is admitted that respondent is not liable for any active negligence in the unloading operations, but it is contended that the lower deck with the iron coaming constituted a structural defect negligently permitted to exist which made the hold an unsafe place to work.

For the appellant there was a brief by *Ray J. Cannon,* attorney, and *A. W. Richter,* of counsel, and oral argument by *L. A. Schweichler,* all of Milwaukee.

*Martin J. Brennan* of Milwaukee, for the respondent.

JONES, J.    This action was brought and was tried by both parties on the theory that it was a common-law action subject to the jurisdiction of the state court, and no remedy against the vessel was claimed.    Although the suit might have been brought in the admiralty court the state court administering common-law remedies had concurrent jurisdiction.    *Georgia C. Co. v. American M. Co.* 169 Wis. 456, 172 N. W. 148.

The jury found that the iron coaming on the second deck rendered the hatchway an unsafe place for persons to work, that respondent was negligent in permitting this unsafe condition, that this negligence proximately caused the injury, and that appellant was not guilty of contributory negligence. After the usual motions the trial judge gave judgment for appellant upon the theory that there was evidence to support the finding that the place was not reasonably safe because of the manner in which the iron coaming was fastened to the second deck.    The circuit court, however, concluded that there was no testimony that the ship was unsafe when turned over to the unloaders, but that the injury was due entirely to the operations of the latter.

It will be seen that the real issue submitted to the jury as to defendant's negligence was whether the coaming rendered the hatchway an unsafe place to work.    The principal argument now made by appellant is that the boat was struc-

turally defective because part only of the second deck had been removed. It was the undisputed testimony that the coaming was for the purpose of strengthening the ship and protecting the remaining part of the lower deck from knocks which might be given by the clams and also for protecting the cables by which the clam was operated from being cut by the edge of the plate. The testimony showed that after the accident it was found that the iron was in good condition but torn apart and that the rivet holes were torn and that the rivets of a piece of the coaming were torn through the plate. The testimony was that when the boat was inspected the coaming was in good condition, including the bolts and rivets. After the inspection the boat came over a quiet sea to Toledo, where it was loaded with fine soft coal by means of a long spout and pump which in no manner had the effect of loosening the coaming or making it unsafe. After being loaded the boat started upon its trip to Milwaukee, where it landed on the night of June 26, 1919. Nothing was done after leaving Buffalo to impair the coaming between that time and the time when she was docked in Milwaukee. After docking in Milwaukee the boat with its cargo was turned over to the Kanawha Fuel Company. The defendant had nothing to do with the unloading of the boat.

The evidence showed that it was the custom, when boats were changed by removing part of the deck, to have a coaming for the protection of the boat, and that in careful operation the clam seldom strikes the sides of the hatchway. It is conceded by appellant that defendant was in no way responsible for the acts of the Kanawha Fuel Company nor for the acts of the stevedores who unloaded the boat or any of the employees of the company. On the contrary they predicate liability solely upon a structural defect in the boat. There is no evidence whatever that the coaming was not in perfect condition until ten or fifteen minutes before the accident happened. There is ample evidence that after the

defendant delivered the boat to the fuel company there was such improper management by the employment of inexperienced employees and the use of imperfect hoisting appliances as might loosen the coaming and cause the injury complained of. The defendant was not bound to anticipate that the unloading would be carried on in so unusual a manner as to damage the boat or cause injury to the employees of the fuel company.

The views already expressed are decisive of the only question relating to defendant's negligence which was litigated or passed upon by the jury. It is urged by appellant's counsel that the removal of a part of the lower deck left the boat structurally defective and left the hold an unsafe place to work; but we find no testimony which supports such a claim.

*By the Court.*—Judgment affirmed.