CARLSON, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant, and WARNOCK, Defendant.

*October 17, 1924—January 13, 1925.*

*Master and servant: Safe place to work: Independent contractor: Negligence in use of apparatus furnished.*

An employer is not released from the duty imposed by sec. 101.06, Stats., to furnish a reasonably safe place to work to employees of independent contractors, but having done so he is not required to see that the independent contractor is guilty of no negligence in the management of the apparatus supplied; and the defendant railroad having furnished reasonably safe chutes for the loading of ice into cars is not liable to an employee of an independent contractor who was injured as a proximate result of the careless or improper use of the appliance furnished by the contractor. p. 371.

APPEAL from a judgment of the circuit court for Columbia county: E. W. CROSBY, Judge. *Reversed.*

Personal injury. On December 27, 1920, the defendant *Warnock* entered into a contract with the *Chicago & Northwestern Railway Company,* hereinafter referred to as the company, by the terms of which he was to cut ice from the Yellow river and deliver the same into cars furnished by the company, at an agreed price per ton. The contractor agreed to perform all labor, furnish all material, tools, and equipment, and complete the work within sixty days. There was also a clause in the contract by which *Warnock* was to indemnify the company, but in the view which we take of the case it is not necessary to set out that provision of the contract.

*Warnock* also agreed to comply with the provisions of the state compensation act and to procure and carry workmen's compensation insurance. As a part of the contract the company agreed to furnish and keep in good condition all skids, runways, and platforms for delivering ice in and on cars spotted at the loading platform and to furnish cars so that the work might proceed without delay.

The plaintiff was one of the employees of *Warnock,* and on February 15, 1921, while assisting in the process of loading ice from the permanent chute into a car, the temporary chute which connected the permanent chute with the interior of the car became dislodged, and the chute, together with a cake of ice and the plaintiff, fell, and the plaintiff sustained the injuries complained of. The plaintiff thereupon made claim for compensation against his employer, *Warnock.* The compensation was allowed and paid by the Employers Mutual Liability Insurance Company, who thereby became subrogated to any claims in favor of the plaintiff by reason of the negligence of any third party. Subsequently the Employers Mutual Liability Insurance Company assigned the claim to the plaintiff, and this action was begun to recover damages from the defendant company upon the

ground that the defendant company had not furnished the plaintiff a reasonably safe place in which to work. Upon the trial the jury found that the defendant company did not furnish a place of employment as free from danger to the life, health, and safety of the plaintiff as the nature of his employment reasonably permitted; that such failure was the proximate cause of the plaintiff's injuries; that the plaintiff was guilty of no want of ordinary care; that an ordinarily prudent man situated as was the plaintiff would not have appreciated the danger of the slipping and falling of the portable chute in question; and assessed the plaintiff's damages at the sum of $5,250. There were the usual motions on behalf of the defendant company, which were denied, plaintiff's motion for judgment was granted, and from the judgment entered pursuant thereto the defendant company appeals.

*Samuel H. Cady* of Chicago, for the appellant.

For the respondent *Carlson* there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *W. H. Farnsworth*.

For the respondent *Warnock* there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *R. B. Graves*.

The following opinion was filed November 11, 1924:

ROSENBERRY, J. We have been aided in our consideration of this case by a model of the permanent and temporary chutes referred to in the statement of facts. It is difficult to make a correct description of the apparatus and we shall attempt to make no further or other statement than is sufficient to exhibit the questions which we think are controlling in this case.

In the first place, it is conceded that *Warnock* was an independent contractor; he had a contract to load so many thousand tons of ice, at a specified price per ton. The manner of doing the work was wholly within his control.

The permanent chute was set up on the ice and was designed to deliver the ice from the pond into cars spotted on the track of the company.   Cakes were cut 22 x 44 inches and of varying thickness, depending upon the thickness of the ice.   They were brought to the foot of the chute and there, by means of horse power, they were elevated up the chute and delivered thence into the car.   Cars were loaded with three thicknesses of ice in each car, and the ice was loaded at the rate of seventeen or eighteen cars a day.   The permanent chute was so arranged that at the end nearest the car it might be adjusted so as to deliver the ice at three different levels.   It was customary for the men, under certain conditions, instead of adjusting the permanent chute to the second position so as to permit the ice to be delivered by gravity into the car, to use the temporary chute in the first position and elevate the end, resting it on the first tier of ice, so that instead of sloping toward the car the temporary or movable chute would slope away from the car. This was to prevent the ice from coming into the car too rapidly.   It was described by one of the witnesses as follows:

"In the construction of the chute there were three places for adjusting the portable chute running into the car.   There were three places for delivering the ice on the portable chute.   The ice would come up what is marked here as 'S' [meaning the slide] and go through the opening and down on to 'D' [a board reaching from the slide to the end of the permanent chute] and then on to the portable chute marked 'A—B' and then into the car.   'L,' or the gate with hinges on, was thrown back when the lower place for the chute was used.   When the first tier of ice was put in, then this gate 'L' was closed, and for loading the second tier the portable chute was moved so that the ice would go up over 'S' [the slide], and over the pieces 'L' and 'K' [adjustable parts] and 'A—B' [the portable chute] to make the second tier.   When they got ready to load the third tier the chute was raised by pulling out a 2 x 8 or 2 x 6.   The portable chute was made of side pieces 2 x 6s.   The bottom was constructed of 2 x 6s.   On the end was a 2 x 4 and there were

two other crosspieces or cleats made of 2 x 6s.   The timbers on which the ice slid were 2 x 6s and the guard on the side was a 2 x 6."

It also appeared that the temporary chute, when in place for use as designed, was prevented from slipping by the 2 x 4 on the end, on the under side of the portable chute. At the time the plaintiff was injured the first tier of ice had been put in the car, and, instead of arranging the permanent chute so as to deliver the ice at the second level, the end of the portable chute in the car was elevated in the manner hereinbefore described.   As frequently happened, a cake of ice stopped on the portable chute.   Plaintiff got out on the portable chute with a bar to bar the cake of ice into the car, and as it went over the end of the portable chute the portable chute became dislodged and fell as before stated.   From the testimony the conclusion cannot be escaped that the slipping of the temporary chute was due to the fact that the weight of the cake of ice raised the 2 x 4 out of the place in which it was engaged and permitted the temporary chute to slide back.   The portable chute was placed upon a cake of ice in the car so that the place where it rested upon the cake formed a fulcrum, and when the cake of ice reached the extreme end of the portable chute in the car the chute would be raised by the weight of the ice.   It appears without dispute that this operation had been performed many times during the season—some testimony would indicate thirty or forty times a day—without an accident.   It also appears that this type of chute had been in use for twelve seasons.   There is no evidence to show that had the temporary chute been adjusted as it was designed to be adjusted, an accident could or would have happened.   This situation is attempted to be met, however, by the plaintiff by showing that the manner in which it was used was known to some agent of the defendant company.   Even if that be true, the entire situation was under the control of *Warnock,* and the agent of the company had no authority or power to direct the manner

in which the apparatus should be used.    There is some testimony to indicate that at times the end of the temporary chute, which rested upon the permanent chute, was held down by sticking a bar into the framework.

The statute, sec. 101.06, Stats. 1921, requires that every employer shall furnish a place of employment which shall be safe for employees therein and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of employees.    This statute has been under consideration by this court many times.

In *Salus v. G. N. R. Co.* 157 Wis. 546, 147 N. W. 1070, it was held that it would be utterly impracticable and unreasonable to make the employer responsible for the safety of a place which was at every moment of time changing and where employees to a large extent necessarily made their own place of work, where the operation was simple and familiar to all.

In *Olson v. Whitney Bros. Co.* 160 Wis. 606, 150 N. W. 959, it was held that an employer was not liable in the absence of a violation of the statute and that an employer is not required to make a place of employment absolutely safe, but if it is as free from danger as the circumstances would reasonably permit, there was a compliance with the statute notwithstanding the place might not have been in the technical sense of the term "safe."    See, also, *Kendzewski v. Wausau S. F. Co.* 156 Wis. 452, 146 N. W. 516; *Hahn v. Rothstein,* 174 Wis. 381, 182 N. W. 983; *La Coco v. Massey S. Co.* 174 Wis. 545, 183 N. W. 677.

The defendant company in this case furnished an apparatus which, when used in the manner in which it was intended to be used, was free from defects and as safe as it could reasonably be made.    The manner of its use was wholly within the authority of *Warnock,* the contractor. Although the portable chute was a simple appliance and the

manner of its operation and use was open and visible to all, so far as the defendant *Warnock* is concerned, a serious question would be presented if he knowingly permitted the use of it in a way that made the place of employment unsafe. We need not consider the liability of the defendant *Warnock,* because, whatever it was, it has been fully compensated and discharged under the workmen's compensation act. Although the defendant *Warnock* was an independent contractor, that fact did not release the defendant company from its statutory obligation to furnish a reasonably safe place to work. *Engel v. T. L. Smith Co.* 164 Wis. 515, 159 N. W. 728.

Under *La Coco v. Massey S. Co., supra,* it is considered that, when the defendant company furnished the apparatus in question in a condition which made it as reasonably safe as the circumstances would permit when used in the way in which it was designed to be used, it is not liable for injuries sustained by an employee of *Warnock* proximately caused by the careless or improper use of the apparatus.

The statute requires the defendant company to furnish a safe place. Under circumstances such as these, it is not required to stand over the place and see that an independent contractor is guilty of no negligence in its management and control. Having furnished a reasonably safe place, the defendant company is not liable.

*By the Court.*—Judgment of the circuit court is reversed, and cause remanded with directions to dismiss the plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on January 13, 1925.