MANDEL BROS., Inc., v. HENRY A.
O'NEIL, Inc., et al.
No. 9731.

Circuit Court of Appeals, Eighth Circuit.
Feb. 27, 1934.

Rehearing Denied April 2, 1934.

William F. Struckmann, of Chicago, Ill. (Ben J. Altheimer and Leo L. Weil, both of Chicago, Ill., and R. A. Bielski and D. S. Elliott, both of Sioux Falls, S. D., on the brief), for appellant.

Albert R. Denu and George Philip, both of Rapid City, S. D., for appellees.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant is a corporation organized under the laws of the state of Delaware, with its principal office at Chicago in the state of Illinois. It appears, also, that there is in Chicago a copartnership doing a mercantile business under the name of Mandel Bros. It appears further that Robert Mandel and Fred L. Mandel, composing the membership of this copartnership, are officers of Mandel Bros., Inc. Henry A. O'Neil, Inc., is a corporation organized under the laws of South Dakota, and Henry A. O'Neil, the individual appellee, is its president. The partnership firm of Mandel Bros. is engaged in the dry goods, contracts, and furnishing business. Between this partnership and Mandel Bros., Inc., there was an agreement providing that the copartnership might, if it desired, assign to the corporation contracts made by the copartnership for the furnishing of the goods, wares, and merchandise to hotels, apartment houses, theaters, etc., and that, upon such assignment, the corporation would fulfill and complete such contracts.

In the spring of 1930, Henry A. O'Neil, Inc., had in process of erection a hotel at Belle Fourche in the state of South Dakota. Beginning in May, and thereafter, a number of propositions for furnishing the various rooms and departments of this hotel were made by Mandel Bros., Inc., in the form of proposals, which, when accepted, constituted contracts of sale. These proposals were made upon the forms of Mandel Bros., Inc., and, as stated in appellant's brief, "the original contracts were on Mandel Brothers, Inc., General Form contracts and in the name of that corporation." The furnishings included lighting fixtures, kitchen equipment and utensils, shades, room and lobby draperies, general furniture, bedroom furniture and bedding, venetian shades, floor coverings of every sort, linens, glassware, silverware, chinaware, blankets, lamps, and various miscellaneous items—in short, a complete furnishing and equipment of the entire hotel, the extensive details of which would unduly burden this opinion. Enumeration would serve only to emphasize the scope of the contract. The articles of merchandise were to be delivered at Belle Fourche, and were to be installed by and at the expense of the seller, to the end that, when the contract was fully executed, the hotel should be completely furnished and equipped. The purchase price aggregated $36,046.67, and down payment of $5,000 was provided.

June 23, 1930, Mandel Bros. wrote Mr. O'Neil a letter in which the following recapitulation of the order was stated:

|  |  | $36,046.67 |
| Cash paid | $5,000.00 | |
| Cash to be paid when ready for delivery | 7,015.59 | 12,015.59 |
| Balance | | 24,031.08 |
| to be covered by 18 notes each for $1,335.06 | | 24,031.08 |

The notes were to be executed by Henry A. O'Neil, Inc., and indorsed by Mr. O'Neil. The letter also contained the following paragraph:

"We find in going over the records that Mr. Dillon had the actual contracts drawn upon the wrong type of form. It is necessary for us to make contracts, out of the state, in the name of the Co-partnership which is separate from Mandel Brothers, Inc., as you will probably recall in connection with the Alex Johnson Hotel. Consequently, in order to avoid the inconvenience of asking you to sign a whole new set of contracts we should appreciate your signing the copy of the attached letter giving us the authority to change these contracts from Mandel Brothers, Inc., to Mandel Brothers, a Co-partnership."

This authority was granted by appellee Henry A. O'Neil, Inc., thus:

"This is your authority to change the contracts recently executed from Mandel Broth-

ers Inc. to Mandel Brothers a Co-partnership.

"Henry A. O'Neil, Inc.,
"By Henry A. O'Neil."

June 23, 1930, pursuant to this change, a complete agreement, covering all the terms of the sale, was duly executed, in which Mandel Bros., a copartnership, was named as the first party, Henry A. O'Neil, Inc., was named as second party, and O'Neil individually was named as third party. The agreement was signed accordingly. The notes to which reference has been made were payable to the order of Mandel Bros., were signed by Henry A. O'Neil, Inc., by its president, and each bears the following indorsement of Henry A. O'Neil: "For Value Received, I hereby guarantee the payment of this note and all expenses of collecting the same including attorneys' fees, and waive protest and notice of nonpayment and diligence in collecting the same and consent that security may be taken or the time of payment be extended without impairing this guaranty."

The merchandise purchased was duly delivered and installed in accordance with the terms of the contract, and Henry A. O'Neil, Inc., made the payments of $5,000 and $7,015.59 therein provided, aggregating $12,015.59. It appears further that notes 1 to 6, inclusive, have been paid in full, and that $886.60 has been paid upon the principal of note No. 7, and $150 upon the principal of note No. 8. Appellees have refused to pay the balance due upon said notes, and Mandel Bros., Inc., to which the notes had been indorsed by Mandel Bros., copartners, brought suit to collect against the appellee corporation and Henry A. O'Neil as indorser. A jury was waived, and the court found the issues for appellees, defendants below.

The defense of appellees was based upon the statutes of South Dakota, §§ 8900 to 8916, inclusive, of chapter 7, part 17, title 6, of the Revised Code of South Dakota, 1919, which, among other things, provide that a foreign corporation, as a condition of being permitted to do business in that state, must file in the office of the secretary of state a duly certified copy of its charter or articles of incorporation; must file with the secretary of state a statement in writing by its president, secretary, treasurer, general manager, or other officer, constituting the secretary of state its agent for the service of process; must file with the secretary of state a duly sworn statement setting forth its name, the location of its office, or principal place of business within the state of South Dakota, and the names and addresses of its officers and of its agent who represents it in that state. It is stipulated that Mandel Bros., Inc., has done none of these things.

Section 8909, Revised Code, South Dakota reads thus: *"Contracts, When Void.* Every contract made by or on behalf of any foreign corporation, subject to the provisions of this chapter, affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this chapter, shall be wholly void, on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

The trial court found that: "In fact the entire transaction from beginning to end was the transaction of the plaintiff corporation through its authorized agents and representatives; that all the records relating to said transaction were kept by the plaintiff corporation, and that the said co-partnership in no manner participated in said business except only for the purpose aforesaid; that the use of the alleged co-partnership name as aforesaid by the plaintiff corporation was and is merely a subterfuge on the part of the plaintiff corporation to evade the laws of the State of South Dakota relating to foreign corporations; that the use of said co-partnership name as aforesaid was wholly for and in behalf of said corporation in said business transaction."

Its conclusion was: "That the business transaction set forth in the foregoing findings of fact was and is essentially intrastate in character and subject to the control and regulation of the State of South Dakota."

That by reason of appellant's failure to comply with the laws of South Dakota relating to foreign corporations the promissory notes in suit were void and unenforceable.

At the threshold of the case we are met by the contention of appellees that the record presents no error reviewable by this court under its established rules and practice. It appears that, at the conclusion of the testimony, both sides rested and indicated a desire to submit the matter upon printed briefs. Sixty days were allotted to each side, with fifteen days additional to plaintiff for reply. Briefs were filed accordingly, and, on November 23, 1932, the court announced its decision in the form of a letter to counsel, which contained the following closing paragraph: "It follows that in my opinion the defendants in this action must prevail, and upon pres-

entation of the necessary and proper findings of fact and conclusions of law in accordance with the foregoing, and judgment of dismissal as prayed for by the defendants, allowing the usual exception to the plaintiff, the same will be signed and filed for record."

The record recites that thereupon the defendants proceeded to prepare findings and conclusions in accordance with the suggestion of the court, and that the parties stipulated that: "The signing, filing and entry of the decision and judgment, including the findings in this case, be deferred until December 31, 1932, to enable the plaintiff to present proposed findings, motion for judgment and requests for declaration of law, or to take such other steps as plaintiff might deem necessary to preserve its record on appeal."

The record further recites: "That proposed findings of fact, conclusions of law and order for judgment were submitted by the plaintiff to the court prior to December 31, 1932, the date upon which the Findings of Fact, Conclusions of Law and Order for Judgment in this action were actually entered."

December 31, 1932, pursuant to stipulation, and, presumably with an understanding between court and counsel, appellant filed its proposed findings of fact and requested declarations of law, which were by the court overruled with exceptions allowed. The court thereupon filed its findings of fact and conclusions of law and entered judgment for appellees.

■ It will be noted that the findings of fact and conclusions of law requested by appellant were presented to the trial court, and ruling asked and obtained some weeks after the hearing ended, and after the issues of fact and law had been submitted to the trial judge for decision; and that that decision had been made known, although not formally entered. In such case, under ordinary circumstances, this court has many times held that, in an action at law tried without jury, the question of law of whether or not there was any substantial evidence to support the court's findings is not reviewable. Southern Surety Co. v. United States (C. C. A.) 23 F.(2d) 55; Denver Live Stock Commission Co. v. Lee (C. C. A.) 18 F.(2d) 11; Highway Trailer Co. v. City of Des Moines, Iowa (C. C. A.) 298 F. 71; Wear v. Imperial Window Glass Co. (C. C. A.) 224 F. 60.

■ However, because of the action of the trial court, in apparent recognition of the stipulation of counsel to hold the final disposition of the case open until December 31, 1932, to enable appellant to take such steps as might be deemed necessary to preserve its record on appeal, we do not feel justified in denying to it such review as may otherwise be permissible.

■ Of course, no error can be assigned to the refusal of the court, sitting as a jury, to make the fact findings requested. St. Louis v. Rutz, 138 U. S. 228, 11 S. Ct. 337, 34 L. Ed. 941; Southern Surety Co. v. United States (C. C. A. 8) 23 F.(2d) 55. There is open to review in such case only the questions of whether the findings support the judgment entered, or whether there is substantial evidence to support the findings. And the latter question is open only when "a request or a motion is made, denied, and excepted to, or some other like action is taken which fairly presents that question to the trial court and secures its ruling thereon." Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60, 63; Fleischmann Construction Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. This question is presented by appellant's motion for judgment on the ground that: "There is no substantial evidence and no evidence whatsoever to sustain a finding or judgment in favor of the defendants and against the plaintiff."

■ Whether there is substantial evidence to support the findings makes necessary a consideration of what may constitute intrastate business within the meaning of the South Dakota Statutes invoked. Merely soliciting orders for goods to be shipped in the course of interstate commerce does not constitute doing business in the state to which the goods are shipped, and therefore does not subject such property to police regulation. Crenshaw v. Arkansas, 227 U. S. 389, 33 S. Ct. 294, 57 L. Ed. 565; Rearick v. Pennsylvania, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336; Dozier v. Alabama, 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264; Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828.

■ The test is whether the business done in the state of destination involves a "question of the delivery of property shipped in interstate commerce, or of the right to complete an interstate commerce transaction," or whether it concerns "merely the doing of a local act after interstate commerce had completely terminated." Browning v. Waycross,

supra, loc. cit. pages 22 and 23 of 233 U. S., 34 S. Ct. 578, 580. In the case last cited the Supreme Court held that: "Parties may not by the form of a non-essential contract convert an exclusively local business subject to state control into an interstate commerce business protected by the commerce clause so as to remove it from the taxing power of the State."

By the contract in that case the price paid for lightning rods included the duty to erect them without further charge. Concerning this the court said: "It is true that it was shown that the contract under which the rods were shipped bound the seller, at his own expense, to attach the rods to the houses of the persons who ordered rods, but it was not within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business, protected by the commerce clause. It is manifest that if the right here asserted were recognized, or the power to accomplish by contract what is here claimed were to be upheld, all lines of demarkation between national and state authority would become obliterated, since it would necessarily follow that every kind or form of material shipped from one state to the other, and intended to be used after delivery in the construction of buildings or in the making of improvements in any form, would or could be made interstate commerce."

The distinction between what is inherently intrastate and what is inherently and necessarily connected with interstate commerce is clearly pointed out by the Supreme Court in the cases cited, to which may be added York Manufacturing Company v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611, and the decision of this court in Palmer v. Aeolian Co. (C. C. A.) 46 F. (2d) 746, 752. The York Case involved the sale of an ice-making plant, which required the supervision of an expert in assembling and erecting it, as necessary to complete delivery in interstate commerce. Palmer v. Aeolian Company concerned the manufacture and sale of a pipe organ, the installation of which required "not only the highest mechanical skill, but a thorough understanding of the methods employed by the manufacturer in the arrangement of mechanical and electrical connections." The installation was held to be inherently connected with interstate commerce.

■ In General Railway Signal Company v. Virginia, 246 U. S. 500, 38 S. Ct. 360, 62

L. Ed. 854, the contract was to furnish completed automatic railway signal systems. It was held that, in the installation, local business was involved, separate and distinct from interstate commerce, and subject to the licensing power of the state. In all cases bearing upon the subject the distinction is carefully drawn between situations requiring local work as essential to a complete delivery in interstate commerce, because of the peculiar nature of the subject-matter of the contract, and those in which the local work done is inherently and intrinsically intrastate. In our judgment, the installation of these furnishings in the hotel at Belle Fourche, S. D., falls within the latter classification. The record convincingly shows that furnishings of the nature described may be, and generally are, put in place by workmen of no exceptional skill, and do not require expert supervision by employees of the seller to complete the transaction in interstate commerce. It appears that only a portion of the articles furnished was carried in stock by appellant. It purchased from various manufacturers, often in the open market, and caused the goods to be shipped to Belle Fourche where they were received by appellant's employees and installed in the hotel. The period thus employed covered several weeks, largely in May and June of 1930. The contract was originally made with Mandel Bros., Inc. No change was suggested until June 23, by letter from Mandel Bros., which contained these significant words: "It is necessary for us to make contracts, out of the state, in the name of the co-partnership, which is separate from Mandel Brothers, Inc. as you will probably recall in connection with the Alex Johnson Hotel."

The proposals of appellant were made upon the form blanks of the corporation. From the very beginning, and after the agreement of June 23, the business was conducted by the corporation, and the suit was brought in its name. The court found that "the use of the alleged co-partnership name as aforesaid by the plaintiff corporation was and is merely a subterfuge on the part of the plaintiff corporation to evade the laws of the state of South Dakota relating to foreign corporations."

■ It is contended that the statute of South Dakota does not forbid the doing of a single act of business in the state. Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 5 S. Ct. 739, 28 L. Ed. 1137, is cited in support of this contention. In Walters Co. v.

Hahn, 43 S. D. 153, 178 N. W. 448, it was stated generally that a single transaction does not constitute the doing of business under such a statute. However, in the later case of Tripp State Bank v. Jerke, 45 S. D. 448, 188 N. W. 314, Walters Co. v. Hahn was held not to be decisive of the question. Acts done in connection with a single transaction were recognized, under certain circumstances, as constituting more than an isolated transaction. We may readily conceive of a situation where the corporation has done but a single act of business and purposes to do no more; but we think the decisive test is that outlined clearly in the late cases of the Supreme Court of the United States, namely, whether or not the local work done is essential to a complete delivery in interstate commerce, is intrinsically interstate, and immediately and inherently connected with interstate commerce. However, in the instant case, Mandel Bros., Inc., clearly evinced a purpose to do many acts of business in any state having statutes of the nature of that under consideration. The letter of June 23, 1930, admits of no other construction, and it is a fair inference that another transaction had already taken place in South Dakota. In such cases, the copartnership, composed substantially of the same individuals, is introduced as an instrumentality for evasion of the inhibition of the statute.

It is further urged in the alternative that, if certain parts of the work done be deemed intrastate in character, the cost thereof may be segregated, and the balance of the notes allowed. This contention is without merit in any view. While the various items were furnished at different times, and were charged separately, the contract was for the entire installation, and the transaction was a unit.

██ In our judgment, the findings of the court were amply sufficient to support the judgment rendered that the notes in suit were void, and there was substantial evidence to support the findings made. A question is presented to this court with respect to the liability of Henry A. O'Neil upon his guaranty, independently of the validity of the notes in suit. This issue was not presented to the trial court in any form during the progress of the trial, nor by any finding of fact or conclusion of law requested. The matter, therefore, is not properly before us as a court of error. It follows, for the reasons stated, that the judgment below should be affirmed, and it is so ordered.