**BUFFINGTON v. OWOSSO MFG. CO.**
**No. 11433.**

Circuit Court of Appeals, Eighth Circuit.
Aug. 1, 1939.
Rehearing Denied Sept. 5, 1939.

Fred A. Isgrig, of Little Rock, Ark. (Harry C. Robinson and John S. Gatewood, both of Little Rock, Ark., on the brief), for appellant.

Ernest Briner, of Benton, Ark., and H. T. Harrison, of Little Rock, Ark. (Buzbee, Harrison, Buzbee & Wright, of Little Rock, Ark., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This suit was instituted by Olin L. Buffington, appellant, and a resident of the State of Arkansas, against Owosso Manufacturing Company, a Delaware corporation, for the recovery of damages for personal injuries which it is alleged he suffered on the evening of February 15, 1938, while employed by the Owosso Manufacturing Company as a helper in the glue room, a department of said company's furniture manufacturing plant located at Benton, in the State of Arkansas. The complaint alleges that the injuries sustained by the plaintiff were the direct result of the negligence of the defendant in failing to keep and maintain a light burning in the mill room, through which the defendant knew it would be necessary for the plaintiff and other employees of the defendant to pass at various times during the night, and in failing to keep and maintain a reasonably safe passage-way to and from the toilet in its plant for the use of the plaintiff and other employees.

The answer of the defendant, after admitting that it is a Delaware corporation, authorized to do business in the State of Arkansas, and is engaged in the manufacture of furniture in that state, denies every other material allegation of the complaint, and alleges that if the plaintiff was injured at the time and place complained of, his injuries were caused solely or in part by his own negligence or conditions, the hazards of which were known to him or were so patent to observation that they

should have been known to him, to which he voluntarily exposed himself with full knowledge and appreciation of any dangers incident thereto, the risks of which he assumed.

The case was tried in the District Court of the United States for the Eastern District of the State of Arkansas, in November, 1938, and at the conclusion of all of the testimony the defendant manufacturing company moved the Court to instruct the jury to return a verdict for the defendant for the following reasons:

(1) The testimony fails to show any actionable negligence on the part of the defendant that was the proximate cause of plaintiff's alleged accident and injuries.

(2) The undisputed testimony shows that the accident and injuries complained of were due to risks and hazards which the plaintiff voluntarily exposed himself to and assumed.

(3) The undisputed proof shows that plaintiff's own negligence was the sole proximate cause of the accident and injuries complained of.

After hearing argument of counsel the Court sustained said motion and instructed the jury to return a verdict for the defendant. From the judgment entered upon such verdict the plaintiff has appealed to this court. In the interest of convenience the parties will be hereinafter referred to as plaintiff and defendant, as in the court below.

There appears to be no material dispute as to the essential facts which, briefly stated, are as follows: At the time of his alleged injuries plaintiff was employed by the defendant company in its furniture factory at Benton, Arkansas, which said employment had been more or less continuous for a period of some twelve years prior thereto. At the time of the alleged injury the plaintiff was working as a helper in the glue room of the furniture factory. The factory building extends east and west lengthwise and consists of a number of rooms or departments. The glue room in which the plaintiff worked is located at the west end of the building. The mill room, in which it is alleged the accident occurred, is immediately east of the glue room. Two doors connect the glue room with the mill room; one, a sliding door located near the middle of the partition wall between the two rooms; the other, a smaller door, located in the parti-

tion wall near the southwest corner of the mill room. The sliding door near the middle of the partition wall was the door most frequently used in going from the glue room to the mill room, and vice-versa. The mill room is 72 feet east and west and 91 feet north and south. From the center door in the partition wall between the glue room and the mill room there was an aisle-like open space extending in a slightly northeasterly direction across the mill room to a door in the partition wall between the mill room and the stock room, which was located immediately east of the mill room. The entrance to the toilet used by the employees is located in the south end of the partition wall between the mill-room and the stock room, and up until some six weeks or two months prior to the time of the alleged accident there was an unoccupied space or passage-way along the west side of the partition wall between the mill room and the stock room, extending south of the door between said rooms to the entrance to the toilet. Some six weeks or two months prior to the accident a portion of this last mentioned space, south of the door between the mill room and the stock room, was utilized for the installation of two swing saws, which were located near the east wall of the mill room. Their combined length, as installed, was approximately sixteen feet. The clearance between the swing saws and the east wall of the mill room was approximately nine feet. Certain rip saws, matching machines and other machinery were located at various places on the mill room floor, leaving such clearance or unoccupied floor space between the machines as was necessary for their convenient and safe operation. There were no regular pathways or aisles marked out and maintained between these various machines, and persons passing through that area of the mill room took whatever course or route that happened to be the most available or free from obstruction at the time. The stock or material used in the manufacture of the product of the factory was trucked from the stock room to the mill room upon small four-wheeled vehicles, the beds of which were about fourteen inches above the floor, and the stock or material moved on them varied in length from four to six feet and in width from two to eighteen inches. During the day, when the mill was in operation, these trucks, or so-called lumber buggies, would be coming and go-

ing to and from the machines, loaded with material or furniture stock, or would be parked near the particular machine which they were at the time serving. At night, when the mill room was not in operation, the trucks, either empty or loaded with material, would be spotted at various places in the mill room in the clear spaces adjacent to the several machines. The machines and trucks spotted near them created whatever crowded or obstructed condition existed on the floor area of the mill room at night. The space occupied by the machines was, of course, constant, but that occupied by the trucks varied with the situation existing at the close of each day's work. Prior to the installation of the two swing saws above referred to, on the mill room floor, the least obstructed route for a person to take in going from the glue room to the toilet would be to pass through the door at or near the center of the partition wall between the mill room and the glue room and go along the passage-way toward the door in the partition wall between the mill room and the stock room, and then turn south along the west side of said wall to the toilet. After the installation of the two swing saws above referred to, this route, after it turned south, was not any more free from obstruction than any other route which one might take through that portion of the mill room because of the trucks of material which were usually spotted between the swing saws and the east wall of the mill room. Even before the swing saws were installed it had been customary for employees passing from the glue room to the toilet to take whatever route through the mill room appeared to them as most convenient and free from obstruction. Except for the night watchman, the only employees on duty at the furniture factory on the evening of the alleged accident were the plaintiff, a co-employe, Luther Davis, and their foreman, J. V. Cash. They were engaged at work in the glue room. There were no lights burning in the mill room nor in the stock room, with the exception of a fifty or hundred watt light located above the time clock on the east wall of the stock room. This light was sufficient to show the location of the door between the mill room and the stock room, but was not sufficient to illuminate the area in the mill room south of the door. On the south wall of the mill room, not far from the place where the alleged accident occurred, there was a light switch

by means of which the lights in the mill room could be turned on if, for any reason, one desired to do so.

On the night of February 15, 1938, the plaintiff, while working in the glue room, had occasion to visit the toilet at about eight or eight thirty o'clock. He went through the door at or near the center of the partition wall between the mill room and the glue room and then turned to his right, toward the south wall of the mill room, and made his way between the machines and lumber buggies toward the toilet. According to the testimony the accident occurred at approximately half way between the toilet and the east wall of the glue room as he was returning to the glue room along the same route he had taken in going to the toilet. In describing the accident he testified as follows: "I had been to the rest room and was on my way back and I got tangled up in one of these Dolly wheels or buggy wheels and it threw me forward and I stepped on a piece of stock on the floor and it threw my feet out in front of me and I fell across one of these dollies. I kinda hung my toe on one of these wheels, on one of these dollies, and it threw me forward and I stepped on a piece of stock on the floor and went backward across one of these buggies."

Immediately after the accident the plaintiff returned to the glue room and reported the same to J. V. Cash, his foreman, who shortly thereafter went into the mill room, turning on the lights as he proceeded, to the place where plaintiff informed him the accident had occurred, which was near a rip saw and three trucks, or lumber buggies, one of them loaded with short pieces of stock, some of which had evidently fallen off or been knocked off onto the floor. After the accident the plaintiff was unable to work and his co-employee, Davis, walked home with him and, according to his testimony, he has been unable to perform any manual labor since said accident.

While the case was tried and the appeal to this Court perfected long subsequent to the date when the New Federal Rules of Civil Procedure (28 U.S.C.A. following section 723c) became effective, the plaintiff included in his designation for inclusion in the record a statement of points relied upon and, as set forth in his brief, a so-called assignment of errors, all of which are based upon the alleged

error of the Court in sustaining the defendant's motion for a directed verdict.

If the record fails to disclose any substantial evidence of actionable negligence on the part of the defendant, it follows that the ruling of the Court below must be sustained. On the other hand, if there is substantial evidence of negligence on the part of the defendant in the record, then the questions of assumed risk and contributory negligence on the part of the plaintiff become material and must be considered. In this connection the plaintiff, in his reply brief and for the first time in the case, calls the Court's attention to certain statutory provisions of the State of Arkansas which he urges as a bar to the defenses of assumed risk and contributory negligence.

A careful reading and consideration of all of the evidence in the case, in our opinion, fails to show any substantial evidence of actionable negligence on the part of the defendant. It is urged by the plaintiff that the defendant was guilty of negligence because, under the undisputed evidence, and pursuant to its instructions, lights were not kept burning in the mill room when that room was not in operation, even though employees working in other departments of the factory had to pass through the mill room in order to reach the toilet provided for their use, but in view of the fact that a light switch was maintained on the south wall of the mill room, which was within easy access of any person desiring to pass through the room after dark, and which would turn on the lights for the entire room, all of which was well known to the plaintiff long prior to the time of the accident, the failure to keep the lights burning when the mill room was not in operation would not constitute negligence on the part of the defendant.

It is further urged that the defendant was guilty of negligence in failing to keep a safe passageway, free from obstruction, from the glue room to the toilet, for the use of its employees, and the fact that the route travelled by the plaintiff on the evening of the injury was more or less obstructed by trucks or lumber buggies, and a piece of lumber known as stock, which was lying on the floor. The undisputed evidence shows that while there was no well defined route from the glue room

to the toilet, and the facts undoubtedly were that employees usually selected the route which to them seemed most accessible and less obstructed at the time, there is nothing in the evidence to indicate that anyone had ever experienced any difficulty in crossing the mill room from the glue room to the toilet until the night of the accident, and the fact that the plaintiff had successfully made the trip, without lights, from the glue room to the toilet, without difficulty, supports the conclusion that the conditions obtaining in the mill room at that time were as safe and free from hazard as could reasonably be expected in manufacturing institutions of that kind. The mere fact that in returning to the glue room the plaintiff inadvertently caught his toe on the wheel of a truck or lumber buggy, and in attempting to save himself, stepped upon a piece of loose lumber and fell, would not, in itself, be sufficient basis for a finding of actionable negligence on the part of the defendant.

While it is true that an employer is obligated to provide a safe place within which his employees are to work, that obligation does not go to the extent of requiring an employer to provide against all hazards. No place is absolutely safe, and the hazards necessarily incident to some occupations are greater than in others. All that any employer is required to do is to use ordinary care and caution for the safety of his employees and, insofar as is reasonably necessary and proper, to protect them against accidental injury and unhealthful conditions.

While it cannot be denied that employment in a furniture factory, or any other institution using tools and machinery, exposes one to dangers which are necessarily and peculiarly incident to the line of employment, these facts were all known to the plaintiff, or should have been known to him, when he entered the service of the defendant, and the additional risk necessarily incident to that class of work was assumed by him when he accepted the employment.

As stated above, the plaintiff, in his reply brief, calls the Court's attention to Section 8505, Pope's Digest of the Statutes of Arkansas, which reads as follows:

"*Employer's duty as to safety.* (a) Every employer shall furnish employment

which shall be safe for the employees therein and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such an employment * *. * safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees; provided that, as used in this Act, the term 'safe' or 'safety' as applied to any employment * * * shall include conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health, safety, and welfare of employees or the public.

"(b) Every employer and every owner of a place of employment * * * now or hereafter constructed, shall so construct, repair, and maintain the same as to render it safe."

And also Section 9132, of Pope's Digest of the Statutes of Arkansas, which reads as follows: *"Assumed risk.* In any action against any corporation under or by virtue of any of the provisions of this act to recover damages for injuries to, or death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where the violation by such corporation of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Plaintiff urges that under these statutes the defendant was barred from asserting the defense of assumed risk. In addition to the fact that the statutes relied on were not referred to in the pleadings, nor in any manner called to the attention of the trial court, which would, in our opinion, preclude any consideration of it by this court, Harrison v. Pullman Co., 8 Cir., 68 F.2d 826, 827; Mandel Bros. v. O'Neil, Inc., 8 Cir., 69 F.2d 452–457; Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447-452; Davilla v. Brunswick-Balke-Collender Co., 2 Cir., 94 F.2d 567–570, the short answer to the contention of the plaintiff is that the sections of the statute quoted have no application to the case at bar for the reason that the undisputed evidence fails to show any actionable negligence or any violation of the statutes on the part of the defendant.

The entire record, viewed in the light most favorable to the plaintiff, in our opinion, wholly fails to disclose any substantial evidence of actionable negligence on the part of the defendant. The action of the trial court, therefore, in sustaining defendant's motion for a directed verdict, was proper and free from error.

It follows that the judgment of the lower court should be affirmed, and it is so ordered.