**Thelma Jane CARTER, Administratrix of the Estate of Junior Raymond Carter, Deceased, Plaintiff,**

v.

**FRASER CONSTRUCTION COMPANY, Baldor Electric Company, Lillard Enterprises, Inc., and Leo Ray, d/b/a Modern Masonry Company, Defendants.**

Civ. A. No. 1707.

United States District Court
W. D. Arkansas,
Fort Smith Division.

July 15, 1963.

---

Hardin, Barton & Hardin, Bryan & Fitzhugh, Fort Smith, Ark., for Lillard Enterprises.

Pearson & Pearson, Fayetteville, Ark., Shaw, Jones & Shaw, Ft. Smith, Ark., for Fraser Const. Co.

Dobbs, Pryor & Dobbs, Ft. Smith, Ark., for Leo Ray.

JOHN E. MILLER, Chief Judge.

(On Motions for Summary Judgment filed by Lillard Enterprises, Inc., and Baldor Electric Company.)

On April 12, 1963, the defendant, Lillard Enterprises, Inc., filed its motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on the ground that the pleadings and the affidavit of W. H. Lillard, with building contract attached thereto, show that said defendant is entitled to a judgment as a matter of law on the complaint filed against it by plaintiff.

On April 8, 1963, the defendant, Baldor Electric Company, filed its motion for summary judgment, and alleged as a ground therefor that the pleadings on file, together with the affidavit of Fred C. Ballman and exhibits attached thereto, demonstrate that as a matter of law there existed no relationship between the plaintiff's decedent and the defendant which imposed upon the defendant any duty to be concerned with the safety of the decedent, and that the defendant did not by its conduct assume any such responsibility, and therefore is not liable for any injury sustained by the deceased.

On April 12, 1963, the plaintiff filed a motion asking the court to defer consideration of the motions for summary judgment until the depositions of Fred C. Ballman, W. H. Lillard, Leo Ray, and John A. Fraser could be taken, reduced to writing, and made a part of the record.

On April 12, the court granted the motion of plaintiff and allowed the plaintiff "ten days after completion of depositions in which to file response to motion for summary judgment of Baldor Electric Company and to submit brief in support of said response, and to file amendment to complaint as to negligence of de-

Sexton & Morgan, Ft. Smith, Ark., for plaintiff.

Bethell & Pearce, Ft. Smith, Ark., for Baldor Electric Co.

fendants Leo Ray and Fraser Construction Company."

On April 17, 1963, a similar order was entered deferring action on the motion for summary judgment of Lillard Enterprises, Inc.

On June 5, 1963, the plaintiff filed an amendment to her original complaint, and on the same date the plaintiff filed as exhibits to be considered by the court the depositions of the individuals heretofore referred to, together with a photograph copy of the specifications for additions to Baldor Electric Company, which specifications bear signatures on behalf of Lillard Enterprises, Inc., and Baldor Electric Company.

The court has studied and considered the pleadings and depositions on file, together with the affidavits hereinbefore referred to, and is convinced that there is no genuine issue as to any material fact between plaintiff and the two moving defendants, and that each of the movants is entitled to a judgment as a matter of law. In reaching this conclusion the court is not unmindful that the burden is upon the movant to establish the complete absence of any genuine issue of fact and that all doubts as to whether there exists a genuine issue of fact should be resolved against the movant.

The plaintiff is a citizen and resident of the State of Oklahoma. The deceased, Junior Raymond Carter, at the time of his death was also a citizen and resident of the State of Oklahoma, and plaintiff is the duly appointed administratrix of the estate of the deceased.

The defendant Fraser Construction Company, hereinafter referred to as Fraser, is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in the City of Fort Smith, Arkansas. The defendant Baldor Electric Company, hereinafter referred to as Baldor, is a corporation organized and existing under the laws of the State of Missouri, with its principal office in the City of St. Louis, Missouri, and is engaged in business in the City of Fort Smith, Arkansas. The defendant Lillard Enterprises, Inc., hereinafter referred to as Lillard, is a corporation organized and doing business under the laws of the State of Arkansas, with its principal place of business in the City of Fort Smith, Arkansas. The defendant Leo Ray, hereinafter referred to as Ray, is a citizen of the State of Arkansas and resides in the City of Fort Smith, Arkansas, and is engaged in business under the name of Modern Masonry Company.

On April 12, 1962, Junior Raymond Carter, plaintiff's decedent, was employed by Sweetser-Buckner Construction Company, hereinafter referred to as Sweetser, to perform work and labor in finishing the cement floor of a building then under construction, to be occupied by the defendant Baldor and situated upon land owned by the defendant Lillard.

On January 19, 1962, Fraser entered into a written contract with Lillard by which Fraser agreed to build an additional building immediately to the north of the building then presently located on the land and under lease to Baldor. Fraser also agreed, inter alia, to furnish all of the materials and labor required for the construction and building, and "the work will be done in a good and workmanlike manner and in all respects in compliance with the plans and specifications and shall be done in compliance with the rules and regulations of the civil authorities. The materials going into said building are to be of first class quality. The building is to be constructed in strict accordance and compliance with the drawings, plans and specifications therefor * * *."

By the terms of the contract, the contractor and all subcontractors were required to carry public liability and property damage insurance and adequate Workmen's Compensation Insurance for their employees.

The contract further provided that it did not cover the electrical work nor the labor and materials incident to the installation of the electrical appliances.

In 1955 or 1956 Baldor desired to open a business in the City of Fort Smith and

contacted the Chamber of Commerce of the City to obtain a location and building. Lillard was the owner of certain land in the City of Fort Smith that was suitable for the construction of a manufacturing plant. Following certain negotiations, Lillard contracted with Fraser to erect the original building, and upon its completion Baldor leased the building from Lillard and immediately began manufacturing electric motors. The business prospered, and it was necessary to have an additional room or building, whereupon Lillard and Baldor on September 5, 1958, entered into another lease, in which it was stated:

"It is understood that one building only has been built on the above described land which building has been and is now occupied by Lessee (Baldor) under lease dated February 4, 1956, but that it is contemplated that an additional building will be built, according to plans and specifications shown by and identified as Exhibit '1' attached hereto and made a part of this lease. It is further contemplated that said building will be finished and ready for occupancy on or before the 15th day of November 1958. Said building will, of course, be constructed by and at the expense of Lessor (Lillard) in accordance with said plans and specifications. This lease is for a term of 10 years commencing when said additional building is finished and ready for occupancy at a yearly rental of $10,200.00. * * * It is further understood that the premises, including the present structures or improvements, shall be used pending the completion of the new building, under the current lease now in effect, as aforesaid, and that when the new building has been completed and ready for occupancy this lease shall supersede the other lease between the parties dated February 4, 1956, * * *."

For some unexplained reason, Lillard did not arrange to construct the additional building until it entered into the contract of January 19, 1962, with Fraser, heretofore referred to. On that date Lillard and Baldor entered into another lease agreement in which, inter alia, it is stated:

"WHEREAS, Lessor [Lillard, party of the first part] and Lessee [Baldor, party of the second part] are presently parties to a Corporation Lease, dated September 5, 1958, by the terms of which Second Party occupies improvements and land owned by First Party * * * ; and

"WHEREAS, Second Party needs additional building area for its manufacturing facilities, and First Party is desirous of furnishing such additional space; and

"WHEREAS, the parties agree that upon completion of the additional floor space, there should be a new lease between the parties covering the additional facilities at an increased rental and for a new term, * * *."

The lease then provides that Lillard shall proceed without unnecessary delay to cause to be constructed an addition to the building then occupied by Baldor, and upon completion of the additional building, it shall be occupied by Baldor at an increased rental, and "that on such date the existing lease agreement between the parties dated September 5, 1958, shall be terminated," and the lease agreement of January 19, 1962, shall become effective.

In the original complaint the plaintiff alleged that the erection of the additional building was at the specific request of Baldor, and Baldor furnished the plans and specifications for the said structure; and that the defendant Ray performed the work as a masonry contractor in the erection of the said structure under a subcontract with Fraser.

That on April 12, 1962, the plaintiff's decedent was engaged in the performance of his duties under his employment by Sweetser as a cement finisher, and while exercising due care for his own safety, "the defendants, and each of them, negligently caused or permitted a

partly constructed wall, twelve feet high and two hundred feet long, to collapse or fall upon plaintiff's decedent, instantly causing the death of plaintiff's decedent."

In paragraph X the plaintiff states that the negligence of each of the defendants consisted of the following:

"(a) The defendant, Lillard Enterprises, Inc., being under a duty so so do, failed to furnish plaintiff's decedent a safe place in which to work and failed to require the defendants, Fraser Construction Company, and Leo Ray, to adequately brace and support the aforementioned wall to prevent the same from falling or collapsing.

"(b) The defendant, Baldor Electric Company, being under a duty so so do, failed to furnish plaintiff's decedent a safe place in which to work; failed to furnish to the defendant, Fraser Construction Company, adequate plans, specifications and supervision to make the erection of the said structure in a workmanlike manner; failed to require the defendants, Fraser Construction Company and Leo Ray, to construct the said wall in an adequate and safe manner; and, failed to require the same defendants to adequately brace and support the aforementioned wall to prevent same from falling or collapsing.

"(c) The defendant, Fraser Construction Company, being under a duty so to do, failed to brace the said wall to prevent the same from falling or collapsing; failed to furnish plaintiff's decedent a safe place in which to work; failed to construct the said wall in an adequate and workmanlike manner; failed to provide the said wall with an adequate foundation or footing; negligently erected the said wall at a time when the same could not, according to the plans and specifications furnished, be done; and, failed to require the defendant, Leo Ray, to construct the said wall in an adequate, safe and workmanlike manner.

"(d) The defendant, Leo Ray, failed to provide plaintiff's decedent with a safe place in which to work and failed to construct the said wall in an adequate, safe and workmanlike manner according to the plans and specifications therefor."

In the amendment to the complaint, the plaintiff, after adopting the allegations of the original complaint and incorporating them by reference, alleged in paragraph III:

"Plaintiff states that the defendants Baldor Electric Company and Lillard Enterprises, Inc. were negligent in failing to provide Plans and Specifications for the construction of the building heretofore referred to and were further negligent in approving Plans and Specifications, which Plans and Specifications were defective in the particulars complained of in Paragraph II above."

In Paragraph II of the amendment, the plaintiff alleged that Fraser was negligent in the preparation of the plans and specifications for the construction of the building for Lillard and Baldor, in that "the Plans and Specifications were prepared by John A. Fraser, a person who is without the skill, ability or knowledge to prepare such Plans and Specifications. Plaintiff states specifically that the Plans and Specifications were defective in that such Plans and Specifications failed and omitted to require the bracing of unsupported walls during construction and that the failure so to require bracing for the unsupported walls was the direct and proximate cause of the wall collapse heretofore complained of."

In the separate answers filed by the defendants, each denied that it or he was guilty of any negligence which was a proximate cause of the injury and death of the decedent as alleged by plaintiff. Also, the defendants Fraser and Ray filed motions to dismiss the complaint of plaintiff, and in the alternative moved that the plaintiff be required to file a more definite statement. The motions to dismiss were overruled, but the court did order

plaintiff to file a more definite statement as to the defendants Fraser and Ray. The amendment was filed as against Fraser and Ray, and also included therein was the paragraph III against Lillard and Baldor, as hereinbefore set forth.

In the argument on the motions to dismiss the plaintiff contended that each and all of the defendants were employers of the deceased by virtue of the provisions of Ark.Stat.Ann., Secs. 81–101 and 81–108 (1960 Repl.); that the statute is not restricted in its application to the relationship between an employer and those who are his own employees for the reason that an identical duty is placed upon the owner of a place of employment who may be a lessor only as is placed upon a person having actual charge of the employee's performing work upon said premises.

Section 81–101 is as follows:

"When used in this act [§§ 81–101 —81–121], 'employer,' includes every person, firm, corporation, partnership, stock association, agent, manager, representative, or foreman, or other persons having control or custody of any employment, place of employment, or of any employee. * *."

Section 81–108 provides:

"(a) Every employer shall furnish employment which shall be safe for the employees therein and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such an employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees; provided that, as used in this act [Secs. 81–101—81–121], the term 'safe' or 'safety' as applied to any employment or a place of employment shall include conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health, safety, and welfare of employees or the public.

"(b) Every employer and every owner of a place of employment,

place of public assembly, or a public building, now or hereafter constructed, shall so construct, repair, and maintain the same as to render it safe."

Section 3 of the Workmen's Compensation Law, appearing as Sec. 81–1303 of Ark.Stat.Ann. (1960 Repl.), provides that every employer and every employee shall be subject to the provisions of the Act and shall be bound thereby, provided, that nothing in the Act shall be construed to conflict with any valid Act of Congress governing the liability of employers for injuries received by their employees.

Section 4, now appearing as Sec. 81–1304, provides:

"The rights and remedies herein granted to an employee subject to the provisions of this act [§§ 81–1301—81–1349], on account of injury or death, shall be exclusive of all other rights and remedies of such employee, his legal representative, dependents, or next kin, or anyone otherwise entitled to recover damages from such employer on account of such injury or death, except that if an employer fails to secure the payment of compensation, as required by the act, an injured employee, or his legal representative, in case death results from the injury, may, at his option, elect to claim compensation under this act or to maintain a legal action in court for damages on account of such injury or death. In such action it shall not be necessary to plead or prove freedom from contributory negligence nor may the defendant employer plead as a defense that the injury was caused by the negligence of a fellow-servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

Section 5 of the Act, being Sec. 81–1305, provides:

"Every employer shall secure compensation to his employees and pay or provide compensation for their

disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury; provided, that there shall be no liability for compensation under this act [§§ 81-1301—81-1349] where the injury or death from injury was solely occasioned by intoxication of the injured employee or by wilful intention of the injured employee to bring about the injury or death of himself or another. The primary obligation to pay compensation is upon the employer and the procurement of a policy of insurance by an employer to cover the obligation in respect to this act shall not relieve him of such obligation."

Section 6 of the Act, being Sec. 81-1306, provides that where a subcontractor fails to secure compensation that the prime contractor shall be liable for compensation to the employees of the subcontractor.

Section 40 of the Act, appearing as Sec. 81-1340(a) (1), provides that the recovery of a claim for compensation does not affect the employee's right to maintain a tort action against any third person responsible for his injury whether the act of such third person be willful or merely negligent. See, Heskett v. Fisher Laundry & Cleaners Co., Inc., 217 Ark. 350, 230 S.W.2d 28.

With further reference to Section 6 of the Act, Sec. 81-1306, supra, the Supreme Court of Arkansas in Baldwin Company v. Maner, Judge, 224 Ark. 348, 273 S.W.2d 28 (1954), at page 352 of 224 Ark., at page 31 of 273 S.W.2d said:

"The General Assembly of this state, by Sec. 6 of the workmen's compensation law, has created the statutory relationship of employer and employee as between a prime contractor and a worker employed by a subcontractor where the subcontractor has not secured compensation to his employee; but the legislature has not made the prime contractor a statutory employer· where the sub-

contractor has secured payment for compensation as provided by the act, as the subcontractor has done in the case at bar. Hence it necessarily follows that since the prime contractor is not the employer of the injured party, he is subject to a common-law action in tort because the Workmen's Compensation Act is only applicable when the relationship of employer and employee exists."

It is admitted:

That Lillard was the owner of the land upon which the new building was being constructed; that the first building constructed and which had been occupied by Baldor since 1956 had proven inadequate in that it was not large enough to furnish the necessary space required for the operation of the manufacturing business of Baldor; that this situation was recognized by Baldor and Lillard at the time the lease contract of September 5, 1958, was entered into, and, as will be noted from an examination of the lease of that date, it was contemplated that another building would be constructed and ready for occupancy on or before November 15, 1958; but construction on the new building did not start until a few days after January 19, 1962, the date that Lillard entered into a contract with Fraser as prime contractor, and on that date another lease was entered into between Baldor and Lillard to become effective upon the completion of the new building and occupancy by Baldor.

The new building was in effect an addition to the existing building and required only the construction of the east-west and north walls. Its length was 200 feet east and west and 120 feet north and south. The masonry work was subcontracted to Ray, who had completed the three walls, but before the roof was placed on the building, which was the duty of Fraser, the north wall collapsed.

The construction of the addition or new building did not in anywise interfere with the possession of Baldor of the old building or with the operation of Baldor's manufacturing business.

The plaintiff contends that the plans and specifications of the new building were defective in certain respects, and that Lillard and Baldor were negligent in failing to provide proper plans and specifications and were negligent in approving defective plans and specifications. This contention is not supported by the record. On the other hand, all that Baldor and Lillard had to do with the transaction were that they agreed that additional space of 24,000 square feet was required, and Lillard then contacted Fraser and advised Fraser of the need, and a contract was entered into between Fraser and Lillard for the construction of the addition or new building in the same manner in which the original building was constructed. Baldor did not interfere in any manner with the defendants Fraser and Ray, or with Sweetser or any other workman. It had no authority whatsoever to control in any manner the employees of the prime contractor or subcontractor. Likewise, while Lillard was the owner of the land upon which the building was being constructed, yet it was depending upon its contract with Fraser for the construction of a building similar to the building to which the new building was to become an addition.

The plaintiff, in opposition to the motions for summary judgment, earnestly contends that the fact situation "brings into play the Arkansas Safety Statute, Ark.Stat.Ann., Sec. 81–101 and Sec. 81–108," and that these statutes impose a duty upon Baldor and Lillard in addition to the duty that existed at common law.

■■ As heretofore pointed out, under the Workmen's Compensation law of Arkansas and the decision of the Supreme Court of Arkansas in the Baldwin Company case, supra, the prime contractor is not the employer of an employee of a subcontractor, and the prime contractor becomes the statutory employer and liable for compensation under the Act in such a case only when the subcontractor has failed to provide workmen's compensation insurance. However, this does not insulate the prime contractor from liability for tort the same as any other third

person might be liable. Whether in the instant case Fraser, as the prime contractor, may be liable also under the provisions of the Arkansas Safety Statute, supra, is not before the court. It may be that under the terms of the Safety Statute the possession of the place of employment by Fraser was sufficient to impose upon it a duty to make the place safe for the employment of the plaintiff's decedent. If so, the duty imposed on Fraser is beyond that imposed by the common law, and he might not be able to escape liability by showing that he exercised ordinary care or even extraordinary care to make the place of employment safe.

■ The plaintiff relies upon American Exchange Bank of Madison, Wisc. v. United States (7 Cir.1958), 257 F.2d 938, 78 A.L.R.2d 879; American Steel & Wire Co. v. Sieraski (6 Cir.1941), 119 F.2d 709; Saxhaug v. Forsyth Leather Co. (1948), 252 Wis. 376, 31 N.W.2d 589; and Engel v. T. L. Smith Co. (1916), 164 Wis. 515, 159 N.W. 728, which the court has examined along with the case of Popowich v. American Steel & Wire Co. (6 Cir. 1926), 13 F.2d 381, but the court does not agree with the contention of the learned counsel for plaintiff that the liability of movants is fixed by the Arkansas Safety Statute.

The provisions of the statute, Secs. 81–101 and 81–108, do not apply unless as provided in Sec. 81–101, "every person, firm, corporation, partnership, stock association, agent, manager, representative, or foreman, or other persons" sought to be charged have or has control or custody of the employment, place of employment, or the employee. Clearly neither Baldor nor Lillard had control or custody of the employment, place of employment, or the employee. Neither Baldor nor Lillard had control or custody of the employment, place of employment, or the injured employee of Sweetser. Fraser as the prime contractor had possession of the place of employment. Lillard was not entitled to possession of the place until the building was completed and possession delivered in accordance with the

terms of the construction contract between it and Fraser. Baldor was not in possession of the place of employment and had no right to the possession until the completed building was delivered to it in accordance with the terms of the lease agreement between it and Lillard. Neither of them was required to furnish and use safety devices and safeguards, or had any authority to direct the manner in which the work was to be done and was being done, and since neither of them was the employer of plaintiff's decedent, Sec. 81–108, supra, is not applicable.

The cases cited and relied upon by plaintiff arose under the Wisconsin "Safe Place Statute." In some respects the Arkansas Safety Statute and the Wisconsin Safe Place Statute are similar, but even the Wisconsin statute would not be applicable to the moving defendants.

In the case of Hrabak v. Madison Gas & Electric Co. (7 Cir.1957), 240 F.2d 472, the court at page 477 said:

> "The rule in Wisconsin is that the owner or occupant is absolved of his duty only if he relinquishes complete control of the premises to the contractor and that the premises are then in a safe condition. Potter v. City of Kenosha, 268 Wis. 361, 374, 68 N.W.2d 4; Criswell v. Seaman Body Corp., 233 Wis. 606, 618, 290 N.W. 177."

The plaintiff does not contend that either of the movants is liable under the common law, but seeks to fasten liability upon each of them only under the provisions of the Safety Statute. Counsel have not called the attention of the court to any decisions of the Supreme Court construing the statute, and the court has not been able to find any decision in which the Arkansas court has discussed or applied the provisions of the statute. The statute became effective March 1, 1937, and appeared in Pope's Digest of the Statutes of Arkansas, 1937, as Section 8505. The only decision dealing with the

section which has been cited by counsel is Buffington v. Owosso Mfg. Co. (8 Cir. 1939), 105 F.2d 692, where at page 697, the court, in discussing the statute together with Section 9132 of Pope's Digest, now Sec. 81–1203, Ark.Stat.Ann. (1960 Repl.), said:

> "Plaintiff urges that under these statutes the defendant was barred from asserting the defense of assumed risk. In addition to the fact that the statutes relied on were not referred to in the pleadings, nor in any manner called to the attention of the trial court, which would, in our opinion, preclude any consideration of it by this court, Harrison v. Pullman Co., 8 Cir., 68 F.2d 826, 827; Mandel Bros. v. [Henry A.] O'Neil, Inc., 8 Cir., 69 F.2d 452–457; Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447–452; Davilla v. Brunswick-Balke-Collender Co., 2 Cir., 94 F.2d 567–570, the short answer to the contention of the plaintiff is that the sections of the statute quoted have no application to the case at bar for the reason that the undisputed evidence fails to show any actionable negligence or any violation of the statutes on the part of the defendant."

Of course, this court does not positively know what interpretation the Supreme Court of Arkansas may place upon the Safety Statute, but is definitely of the opinion that the court would hold in a case where the facts are similar to the instant case that the statute does not apply to persons having the same or similar relation to the place of employment in which an injury may occur as did Baldor and Lillard in the instant case.

Therefore the motions of Baldor and Lillard should be granted, and the complaint and amendment as against them should be dismissed.

An order in accordance herewith is being entered today.